1  CHRISTOPHER WARD, CA Bar No. 238777
     cward@foley.com
2  KALEB N. BERHE, CA Bar No. 302080
     kberhe@foley.com
3  **FOLEY & LARDNER LLP**
   555 SOUTH FLOWER STREET, SUITE 3300
4  LOS ANGELES, CA 90071-2418
   TELEPHONE: 213.972.4500
5  FACSIMILE:  213.486.0065

6  Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC., AIR MENZIES INTERNATIONAL (USA), INC., and MENZIES AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DOUGLASS, AN INDIVIDUAL, ON BEHALF OF HIMSELF, AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>MENZIES AVIATION (USA) INC., A DELAWARE CORPORATION; AIRCRAFT SERVICE INTERNATIONAL, INC., A DELAWARE CORPORATION; AIR MENZIES INTERNATIONAL (USA) INC., A DELAWARE CORPORATION; AND DOES 1-50, INCLUSIVE,<br><br>Defendants. | Case No. **'24CV0115 JO   DDL**<br><br>**DEFENDANTS AIRCRAFT SERVICES INTERNATIONAL, INC., AIR MENZIES INTERNATIONAL (USA), INC., AND MENZIES AVIATION (USA), INC'S NOTICE OF REMOVAL OF ACTION**<br><br><u>Filed Concurrently With:</u><br><br>1. Declaration of Christopher Ward;<br>2. Civil Cover Sheet;<br>3. Disclosure Statement and Certification and Notice Interested Parties; and<br>4. Proof of Service |

DEFENDANTS' NOTICE OF REMOVAL
Case No.

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants AIRCRAFT SERVICE INTERNATIONAL, INC. ("ASIG"), AIR MENZIES INTERNATIONAL (USA), INC. ("Air Menzies International"), AND MENZIES AVIATION (USA), INC. ("Menzies Aviation (USA), Inc.") (collectively referred to as "Defendants") pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, as well as the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15, hereby invoke this Court's jurisdiction and remove the above-captioned case, pending in the Superior Court of California, San Diego County, Case No. 37-2023-00049985-CU-OE-CTL to the United States District Court for the Southern District of California on the following grounds:

## I. PROCEDURAL HISTORY

1. On November 16, 2023, Plaintiff Richard Douglass ("Plaintiff") commenced this action by filing an unverified Complaint in the Superior Court of California, County of San Diego, entitled "RICHARD DOUGLASS, an individual, on behalf of himself, and on behalf of all persons similarly situated, v. MENZIES AVIATION (USA), INC., a Delaware corporation; AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; AIR MENZIES INTERNATIONAL (USA), INC., a Delaware corporation; and DOES 1 through 50, inclusive" Case No. 37-2023-00049985-CU-OE-CTL (the "Complaint"). Defendants returned a signed notice of acknowledgment of service of the Complaint on December 18, 2023. [Declaration of Christopher Ward ("Ward Decl."), ¶ 2.] A true and correct copy of Plaintiff's Complaint is attached to the Declaration of Christopher Ward as **Exhibit A**.

2. Plaintiff's Complaint is the initial pleading in this action that sets forth his claims for relief upon which this case is based. Therefore, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days from the date on which Defendant was formally served with the Summons and Complaint. *See*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999); *Miletak v. AT&T Servs., Inc.*, No. 17-CV-00767-EMC, 2017 WL 2617961, at *2 (N.D. Cal. June 16, 2017) ("[Plaintiff] had not formally served [Defendant] until . . . [Defendant] signed and returned the Notice and Acknowledgement forms.  That is the date, therefore, on which the removal clock began to run.").

3. This action was not commenced in state court more than one year before the date of removal.  *See* 28 U.S.C. § 1446(c)(1).

4. No previous notice of removal has been filed in this case.

5. The Complaint, which has been attached hereto as Exhibit A, along with other documents attached to the Ward Decl. as Exhibit A, pursuant to 28 U.S.C. § 1446(a), are all the process and pleadings filed in this action, and no hearings or other proceedings have taken place in this action to Defendants' knowledge.

6. Defendants file this Notice of Removal without conceding that Plaintiff has pleaded claims upon which relief can be granted and without waiving any defenses to the claims asserted by Plaintiff.  Defendants specifically reserve the right to assert, if applicable, any and all defenses enumerated in Rule 12 of the Federal Rules of Civil Procedure or any other affirmative defenses, including those enumerated in Rule 8(c) of the Federal Rules of Civil Procedure.

7. Plaintiff has brought this action as a class action "on behalf of himself and a CALIFORNIA CLASS in order to fully compensate CALIFORNIA CLASS for [its] losses incurred during the CLASS PERIOD caused by DEFENDANTS' uniform policy and practice which failed to lawfully compensate these employees."  [Ward Decl., ¶3, Ex. A.]

8. The Complaint alleges eight causes of action premised on the following alleged violations of the California Business and Professions Code and California Labor Code: (1) Unlawful Business Practices; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Compensation; (4) Failure to Provide Required Meal Periods; (5) Failure to Provide Required Rest Periods; (6) Failure to Provide Accurate Itemized Statements;

(7) Failure to Pay Wages When Due; (8) Failure to Reimburse Employees for Required Expenses.  [Ward Decl., ¶3, Ex. A.]

9. Defendants filed and served their Answer to the Complaint on January 17, 2024.  A true and correct copy of Defendants' Answer is attached to the Ward Decl. as **Exhibit B**.

10. A true and correct copy of the state court docket in the Superior Court of California, County of San Diego is attached to the Ward Declaration as **Exhibit C**.

11. As demonstrated below, this Court has original jurisdiction over Plaintiff's claims.

## II. REMOVAL IS PROPER UNDER CAFA

12. The Action as filed in the Superior Court is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, because the matter in controversy as reasonably alleged in the Complaint exceeds the value of $5,000,000, exclusive of interest and costs, and is a class action in which (i) at least one member of the class is a citizen of a state different than Defendant, and (ii) the proposed class includes at least 100 members.  28 U.S.C. § 1332(d)(2)(A) and (C); 18 U.S.C. § 1332(d)(5). [Ward Decl., ¶3, Ex. A.]

### A. The Complaint Asserts a Class Action

13. A removable class action includes "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought under one or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Plaintiff alleges his claims as class claims pursuant to California Code of Civil Procedure section 382.  [Ward Decl., Ex. A at ¶ 15.] California Code of Civil Procedure section 382 has requirements similar to those under Federal Rule of Civil Procedure 23, including, among other things, requirements of numerosity of class members, commonality of the questions of law and fact, typicality of claims and defenses of the class, whether common questions predominate, and adequacy of protection of the interests of the class by the class representatives.  *Compare* Fed. R.

Civ. P. 23(a) *with* California Code of Civil Procedure section 382.  Plaintiff alleges that his claims meet the requirements to maintain a class action under California Code of Civil Procedure 382.  [Ward Decl., Ex. A at ¶¶ 53–65.]  Therefore, the Action is a removable class action pursuant to 28 U.S.C. § 1332(d).

### B. The Citizenship of the Parties is Minimally Diverse

14. Diversity among parties to a class action need only be minimally diverse, such that the citizenship of only one member of the putative class must be diverse from the citizenship of only one defendant.  28 U.S.C. § 1332(d)(2)(A).

15. At the time of the filing of the action and at the time of filing this Notice of Removal, Plaintiff was and still is a citizen of California, inasmuch as Plaintiff alleges that he represents a class of California employees and worked in the county of San Diego. [*See* Ward Decl., Ex. A at ¶¶ 5, 7.]  On information and belief, Plaintiff is a citizen of the State of California for purposes of assessing diversity jurisdiction.  *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (holding that a party's allegation of minimal diversity may be based on "information and belief"); *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (holding that for diversity purposes, a person is a citizen of the state in which they are domiciled).

16. Plaintiff admits that ASIG is a Delaware corporation.  [Ward Decl. at ¶ 3, Ex. A at ¶ 2.]  ASIG is headquartered in Dallas-Fort Worth, Texas ("DFW").  [*Id.* at ¶ 9.] For the purposes of diversity of citizenship, ASIG is a citizen of both Delaware and Texas.  28 U.S.C. § 1332(c)(1) (for purposes of diversity of citizenship, a corporation is a citizen of every state or foreign country where it is incorporated and where it has its principal place of business); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (holding principal place of business for purposes of citizenship "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

17. Menzies Aviation (USA), Inc. is now, and was at the time the Action was commenced, organized under the laws of the State of Delaware with its headquarters in

Dallas-Fort Worth, Texas. [Ward Decl. at ¶ 10.] Menzies Aviation, Inc. is the parent company of both ASIG and Menzies Aviation (USA), Inc. and the Menzies enterprise's high-level officers work at the DFW headquarters and direct, control, and coordinate the company's activities from DFW. [*Id.*] For purposes of diversity of citizenship, Defendants are therefore citizens of Delaware and Texas, or both states. 28 U.S.C. § 1332(c)(1) (for purposes of diversity of citizenship, a corporation is a citizen of every state or foreign country where it is incorporated and where it has its principal place of business); *Hertz Corp.*, 559 U.S. at 80.

18. Because Plaintiff is a citizen of California, on the one hand, and Defendants ASIG and Menzies Aviation (USA), Inc. are both citizens of Delaware and Texas, on the other hand, minimal diversity of citizenship exists in this matter.

### C. The Proposed Class Contains at Least 100 Members

19. The purported class, as alleged by Plaintiff in Paragraph 53 of his Complaint, is defined as "all persons who are or previously were employed by Defendant Menzies Aviation and/or Defendant Aircraft Service International and/or Defendant Air Menzies International in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court[.]" [Ward Decl., Ex. A at ¶53.] Plaintiff concedes that the "members of the class are so numerous that joinder of all members is impractical." [*Id.* at ¶ 55.] In fact, there are approximately 3,408 current and former California non-exempt employees of ASIG and/or Menzies during the relevant class period alleged by Plaintiff (November 16, 2019 through the present).[1] [Ward Decl., Ex. A at ¶53; ¶ 12.] The proposed class thus meets the jurisdictional threshold of at least 100 members pursuant to 28 U.S.C. §1332(d)(5).

### D. The Amount in Controversy Exceeds $5,000,000

---

[1] Air Menzies International is an entity with international operations which is separate from Menzies Aviation (USA), Inc. and ASIG and is not properly named as an employer in this case because Plaintiff never had any relationship or contact with Air Menzies International. [Ward Decl., ¶ 11.] Accordingly, the estimated putative class number reflected herein does not include Air Menzies International employees.

20. To meet the amount in controversy requirement for removal under 28 U.S.C. § 1332(d)(2), Defendants need only set forth a plausible allegation or set of allegations indicating that the amount in controversy exceeds $5,000,000. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (the Court looks to whether the actual underlying facts support the required amount in controversy, as established by a "short and plain statement" of those actual facts).

21. Although Defendants dispute they are liable to Plaintiff or the putative class for any of the damages alleged in the Complaint, the amount in controversy exceeds $5,000,000 based on Plaintiff's claims. Plaintiff alleges that he and the putative class members were not compensated for all time worked, were not paid minimum wage for all hours worked; were not paid overtime; were not provided meal and rest periods; did not have all applicable compensation included in their regular rate of pay calculations; incurred personal expenses for the use of their personal cell phones, vehicles, computers, and home internet; were not paid sick pay rates; incurred unlawful wage deductions, time manipulation, and rounding; were not paid accrued and vested vacation/PTO upon termination; as well as derivative claims for failure to provide accurate itemized wage statements and waiting time penalties. [Ward Decl., Ex. A at ¶¶17–52.] He therefore seeks damages according to proof, unpaid wages, legally applicable penalties, liquidated damages, pre-judgment interest, attorneys' fees, and equitable relief. [Ward Decl., Ex. A at Prayer for Relief.]

22. <u>Minimum Wage Violations</u>. Plaintiff alleges Defendants required him and the putative class to work off the clock. [*See* Ward Decl., Ex. A at ¶¶17–18, 27–35, 80–93.] Plaintiff seeks to recover "all unpaid wages, according to proof, interest, statutory costs, as well as the assessment of any statutory penalties against DEFENDANTS, in a sum as provided by the California Labor Code and/or other applicable statutes." [Ward Decl., Ex. A at ¶ 93.] The minimum wage in California during 2022 was $15.00 per hour. [Ward Decl. at ¶ 15(a).] Assuming, conservatively, that Plaintiff was not paid for one hour of work per week, and using the minimum wage of $15 for the time period that

he worked, Plaintiff's unpaid minimum wages claim would total $420 ($15 per week multiplied by 28 weeks). [*See id.* at ¶ 15(b).] Multiplying this amount by 3,408 putative class members results in a total of $1,431,360 in alleged minimum wage liability. [*Id.* at ¶ 15(c).] It is therefore plausible that the unpaid minimum wage claim totals $1,431,360 for the entire class. Of course, it is more likely that many if not most of the putative class members worked for periods longer than Plaintiff's brief 28-week tenure. A larger damages figure for Plaintiff's unpaid minimum wage allegations is thus plausible.

23. <u>Failure to Pay All Overtime Wages</u>. Plaintiff alleges Defendants caused him to work overtime hours but did not pay for all hours worked at the required overtime rates. [Ward Decl., Ex. A at ¶¶ 27–35.] While Plaintiff does not allege the specific number of alleged unpaid overtime hours he worked, he claims that Defendants made him and other putative class members work off the clock, automatically deducted 30 minutes for meal periods that were not taken or were short, and failed to take into account all remuneration in calculating the regular rate of pay. [Ward Decl., Ex. A at ¶ 19.] Plaintiff's average rate of pay was $16.25 per hour during the class period. [Ward Decl. at ¶ 16(a).] Using Plaintiff's rate of pay, and assuming conservatively one hour per week of unpaid overtime at time and a half, which is a rate of $24.375 per hour, Plaintiff's individual unpaid overtime claim would amount to $24.375 per week. [*Id.*] Plaintiff worked for ASIG for 28 weeks during the operative time period. [*See id.* at ¶ 15(b).] $24.375 of weekly alleged unpaid overtime multiplied by 28 weeks totals $682.50. [*Id.* at ¶ 16(a).] Assuming, as Plaintiff alleges, that his claims are representative of the claims of all putative class members, multiplying Plaintiff's potential overtime claim of $682.50 by 3,408 putative class members results in an estimated alleged overtime liability for the class of $2,325,960. [*Id.* at ¶ 16(b).] Again, this estimate is conservative because the number of weeks worked by the majority of putative class members is likely much higher than Plaintiff's brief 28-week employment.

24. <u>Meal Period Violations</u>. Plaintiff alleges that Defendants failed to provide him with legally compliant meal periods because Defendants' "uniform policy and

-7-

DEFENDANTS' NOTICE OF REMOVAL
Case No.

practice not to pay PLAINTIFF and other CALIFORNIA CLASS Members for all time worked." [Ward Decl., Ex. A at ¶ 18.] Non-compliant meal periods are subject to a premium of one hour of straight pay. Cal. Labor Code § 226.7. Using Plaintiff's average straight time rate of $16.25, and conservatively assuming one meal period violation per week, Plaintiff would be entitled to $16.25 per week, making the meal period liability total $455 (28 weeks x 1 violation per week). [Ward Decl. at ¶ 17(a).] Multiplying this number by 3,408 class members results in total alleged liability of $1,550,640 for the alleged meal period violations. [*Id.* at ¶ 17(b).] And again, the average putative class member was likely under Defendants' employ for longer than Plaintiff's 28-week period, rendering the above damages calculation especially conservative.

25. <u>Rest Period Violations</u>. Plaintiff similarly alleges that Defendants failed to provide lawful rest periods. [Ward Decl., Ex. A at ¶ 20.] The premium for non-compliant rest periods is the same as the premium for non-compliant meal periods: one hour of straight pay. Cal. Labor Code § 226.7. Conservatively assuming only a single rest period violation per week, the same calculations that apply to the meal period claim apply to Plaintiff's rest break claim, meaning that estimated liability for Plaintiff's individual rest break claim totals $455. [Ward Decl. at ¶ 17(a)–(c).] That number multiplied by 3,408 class members plausibly results in a total of $1,550,640 for alleged liability on a class-wide basis. [*Id.* at ¶ 17(c).]

26. <u>Wage Statement Violations</u>. Plaintiff also seek penalties for allegedly inaccurate wage statements. [Ward Decl., Ex. A at ¶118 –123.] Pursuant to Labor Code Section 226(a), these penalties are a $50.00 initial violation for the first pay period and $100.00 violation for every subsequent pay period, up to a maximum of $4,000.00. Defendant operates on a biweekly payroll period cycle, such that in the period of August 20, 2021 to March 4, 2022 that Plaintiff worked, he allegedly suffered 14 wage statement violations. [Ward Decl. at ¶ 18(a).] Based on the allegations in the Complaint, Plaintiff would receive an alleged penalty of $1,350 calculated as $50 for the first violation and $100 for each of the remaining 10 pay periods. [*Id.* at ¶ 18(b).] The estimated penalties

among 3,408 putative class members is therefore $4,600,800 (3,408 x $1,350). [*Id.* at ¶ 18(c).]

27. <u>Waiting Time Penalties</u>. Plaintiff seeks waiting time penalties for alleged failure to pay all wages due at termination. [Ward Decl., Ex. A at ¶ 124–131.] Plaintiff seeks waiting time penalties of up to 30 days wages under California Labor Code Section 203. [Ward Decl., Ex. A ¶ 131.] Plaintiff's final rate of pay was $17.75. [Ward Decl. at ¶ 13.] Multiplying Plaintiff's final pay rate by eight hours per day by 30 days results in a total of $4,260 in waiting time penalties attributable to Plaintiff's individual claim. [Ward Decl. at ¶ 19(a).] Of the 3,408 putative class members, approximately 2,108 are former employees who would be allegedly entitled to waiting time penalties. [*Id.* at ¶ 19(b).] Taking Plaintiff's alleged waiting time penalties of $4,260 multiplied by 2,108 former putative class members totals $8,980,080. [Ward Decl. at ¶ 19(b).] It is therefore plausible that Plaintiff's waiting time allegations total $8,980,080.

28. <u>Reimbursement Claim</u>. Plaintiff alleges that Defendants failed to indemnify and reimburse him and the putative class for expenses for expenses for the use of their personal cell phones, vehicles, computers, and home internet. [Ward Decl., Ex. A at ¶ 132–135.] Assuming conservatively that Plaintiff spent at minimum $100 per month for each of the expenses enumerated in his Complaint over the course of his 28 weeks of employment, the plausible amount in controversy for his individual unpaid reimbursement claim could be $700 ($100 x 7 months). [Ward Decl. at ¶ 20(b).] Using a conservative estimate that each putative class member worked for Defendants for only one year, and taking Plaintiff's allegations as accurate representations of the putative class, the calculated plausible amount in controversy for the total unpaid reimbursement claim across the putative class could be $4,089,600 ($100 per month x 12 months x 3,408 putative class members). [*Id.* at ¶ 20(c).]

29. Based on the estimated amounts in controversy for each claim, as set forth above, the total damages sought by the putative class plausibly amounts to $24,529,080. [*Id.* at ¶ 21.]

30. <u>Attorneys' Fees</u>. Plaintiff also seeks class-wide attorneys' fees, an amount properly included in the amount in controversy calculation for class action removal purposes under 28 U.S.C. § 1332(d)(2). *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (overruled on other grounds) (showing attorneys' fees are properly considered for the amount in controversy when attorneys' fees are authorized by the underlying statute); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001) (showing attorneys' fees are considered on a class-wide basis as opposed to solely named plaintiffs). In the Ninth Circuit, a conservative estimate for attorneys' fees associated with prosecuting a class action case is approximately 12.5% of the total amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Thus, for purposes of calculating the amount in controversy for diversity jurisdiction, the above damages calculations should be increased by an additional 12.5% or $2,954,310 to represent the estimated attorney's fees associated with prosecuting this Action. [Ward Decl. at ¶ 22.]

31. Based on the foregoing, there is "a plausible allegation" that the <u>total</u> amount in controversy set forth in the Complaint—$27,595,215 (alleged damages sought plus attorneys' fees and costs—far exceeds the jurisdictional threshold for class actions and removal to this Court pursuant to diversity jurisdiction under 28 U.S.C. §1332(d) is proper. *See Lewis v. Verizon Commc'ns*, 627 F.3d 395, 401 (9th Cir. 2010), citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("once the proponent of federal jurisdiction has explained plausibly how the stakes exceed the $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much").

### III.  REMOVAL IS ALSO PROPER UNDER FEDERAL QUESTION JURISDICTION

32. Plaintiff was employed at all relevant times by Defendant ASIG, but has no employment relationship with either Air Menzies or Menzies Aviation (USA), Inc. [Ward Decl. at ¶ 7.]

33. During his employment with ASIG, Plaintiff was a member of and represented by LOCAL #74, United Service Workers Union IUJAT (the "Union"). [*See Id.* at ¶ 8.]

34. Defendant ASIG and the Union representing Plaintiff are parties to a collective bargaining agreement and related memoranda of agreement (the "CBA") that were and remained in force for the duration of Plaintiff's employment. [*Id.* at ¶ 8.] The CBA contains a "complete agreement on wages, hours of work, [and] working conditions," for employees, including Plaintiff during his employment. [*Id.* at ¶ 8, **Exhibit D**, p. 2.]

35. Specifically, the CBA contains express provisions regarding overtime and when and how employees covered by the CBA are entitled to premium wages for hours worked in excess of certain daily and weekly thresholds. [*Id.* at ¶ 8, Exhibit D, pp. 4, 8, 16.]

36. California Labor Code § 510 establishes California's requirement for payment of overtime wages for hours of work in excess of eight in one day and/or 40 in one week. However, § 514 of the Labor Code provides that Section 510's requirements "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

37. The CBA expressly provides for wages, hours of work and working conditions of covered employees, and further provides for premium wages for overtime hours. [*Id.* at ¶ 8, Exhibit C, pp. 4, 8, 16.] Accordingly, per the express provisions of Labor Code § 514, the overtime requirements of Labor Code § 510 do not apply to Plaintiff and other similarly situated individuals he seeks to represent who are covered by the CBA. Plaintiff's overtime claims thus necessarily implicate and require interpretation of the CBA's provisions.

38. Plaintiff alleges that Defendants failed to properly pay overtime to himself and others under the requirements of Labor Code § 510. However, Plaintiff's overtime allegations are not dependent exclusively upon the state overtime rights created by Labor Code § 510. Rather, because California's statutory overtime provisions do not apply to employees covered by a collective bargaining agreement that independently addresses overtime hours and premium pay, Plaintiff's allegations of improper overtime pay are in fact allegations of failure to abide by the terms of the CBA. *See Firestone v. So. Cal. Gas Co.*, 219 F.3d 1063, 1068 (9th Cir. 2000) (noting that where employees have opted out of California's overtime provisions through a collective bargaining agreement, a claim for unpaid overtime is preempted by the LMRA); *see also McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005 (2018) (the preemptive force of the Railway Labor Act is "virtually identical" to that of the LMRA); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (holding that the preemption standard under Section 301 of the LMRA is also appropriate for addressing questions of RLA preemption).

39. The RLA creates "a comprehensive framework for resolving labor disputes" in the rail and airline industries. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). Within this framework, labor disputes are first categorized as "representation," "major," or "minor," according to their subject matter, then assigned to a corresponding dispute-resolution mechanism. *See W. Airlines, Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301, 1302–03 (1987) (O'Connor, J., in chambers).

40. State law claims are minor disputes under the RLA where they are those "growing out of grievances or . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a; *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n (Conrail)*, 491 U.S. 299, 303 (1989).

41. The United States Supreme Court has stated that federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements. *See Steelworkers v. Rawson,* 495 U.S. 362, 368 (1990); *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). The RLA preempts state law claims that are based

upon, or require interpretation of, a collective bargaining agreement. *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132-33 (9th Cir. 2016); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-33 (9th Cir. 2016); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (en banc). Furthermore, because the RLA preempts state law claims that allege a violation of or require interpretation of a collective bargaining agreement, the United States District Court has original jurisdiction over such claims and state law actions may be properly removed to federal court. *See, e.g.*, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243-1244 (9th Cir. 2009)

42. In the present matter, because payment of overtime is the subject of the CBA as is proper under Labor Code § 514, Plaintiff's claims for failure to pay proper overtime are dependent upon proof of a violation of the terms of the CBA with respect to both himself and all others who he seeks to represent covered by the CBA. The issue of whether Plaintiff and others have been paid proper overtime thus cannot be resolved without interpreting the overtime provisions of the CBA itself.

43. Further, in addition to the employees subject to the CBA, various employee groups working for one or more Defendants in California are covered by collective bargaining agreements that have been negotiated with several different unions—separate and apart from the CBA applicable to Plaintiff and other employees who work at San Diego International Airport—which also address wages, hours, and other terms and conditions of employment. [Ward Decl. at ¶ 8, Exhibit D.]

44. Because Plaintiff's overtime claims require interpretation of the CBA, those claims are preempted by the RLA and this Court has original federal question jurisdiction over such claims. *Rawson*, 495 U.S. at 368; *Lueck*, 471 U.S. at 220; *Cramer*, 255 F.3d at 693. This Court likewise has original federal jurisdiction over the alleged overtime, meal period and expense indemnification class claims Plaintiff purports to bring on behalf of other of Defendants' employees covered by different collective bargaining agreements. Removal of such claims is thus proper under 28 U.S.C. §§ 1331 and 1441 as one in which

the federal district courts have original jurisdiction.  *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993).

45.  Because this Court has original jurisdiction over Plaintiff's overtime claims and his meal period and reimbursement claims on behalf of other Defendants' employees, it further has jurisdiction over the entire action because, where a plaintiff brings both preempted and non-preempted state law claims as part of the same action, the non-preempted state law claims are also properly removable under 28 U.S.C. § 1367.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 n.3 (2003).

46.  The mechanisms prescribed by the RLA are the sole method for adjudicating minor disputes.  *Id.* at 516.  Accordingly, Plaintiff's claims are preempted by the RLA and are removable to federal court under 28 U.S.C. § 1331.  *See, e.g., Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95, 97 (7th Cir. 1988) (holding that plaintiff's claim under state law was actually a minor dispute and was properly removed to federal court).

25.  Removal of entire Complaint is thus proper under 28 U.S.C. §§ 1331, 1367 and 1441 as one in which the federal district courts have original jurisdiction.  *Ramirez*, 998 F.2d at 747.

**IV.   THE OTHER REQUIREMENTS FOR REMOVAL ARE MET**

26.  Removal to this Court is proper as the Superior Court of the State of California, County of San Diego, where this action was originally filed, is located within this district.

27.  Defendants believe that the documents contained in Exhibit A to the Ward Declaration comprise the complete record of filings made in the Superior Court of California, County of San Diego.

28.  This Court has original jurisdiction over all causes of action alleged in this matter pursuant to the provisions of 28 U.S.C. § 1332 and the entire action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

29. Pursuant to 28 U.S.C. § 1446(d), Defendants are filing written notice of this removal with the clerk of the Superior Court for the State of California, County of San Diego. Copies of the Notice of Removal are also being served on Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

30. Wherefore, Defendants pray that this action be removed from the Superior Court of California, County of San Diego to the United States District Court for the Southern District of California, and for such further relief as may be just and proper.

31. This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to, defenses and objections to venue, improper service of process, and personal jurisdiction. No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, motions and pleas are expressly reserved.

DATE: JANUARY 17, 2024

**FOLEY & LARDNER LLP**
CHRISTOPHER WARD
KALEB N. BERHE


By: */s/ Christopher Ward*
CHRISTOPHER WARD
Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC., AIR MENZIES INTERNATIONAL (USA), INC., and MENZIES AVIATION (USA), INC.