CHRISTOPHER WARD, CA Bar No. 238777
   cward@foley.com
KALEB N. BERHE, CA Bar No. 302080
   kberhe@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC., AIR MENZIES INTERNATIONAL (USA), INC., and MENZIES AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DOUGLASS, AN INDIVIDUAL, ON BEHALF OF HIMSELF, AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>MENZIES AVIATION (USA) INC., A DELAWARE CORPORATION; AIRCRAFT SERVICE INTERNATIONAL, INC., A DELAWARE CORPORATION; AIR MENZIES INTERNATIONAL (USA) INC., A DELAWARE CORPORATION; AND DOES 1-50, INCLUSIVE,<br><br>Defendants. | Case No. **'24CV0115 JO   DDL**<br><br>**DECLARATION OF CHRISTOPHER WARD IN SUPPORT OF DEFENDANTS AIRCRAFT SERVICE INTERNATIONAL, INC., AIR MENZIES INTERNATIONAL (USA), INC., AND MENZIES AVIATION (USA), INC.'S NOTICE OF REMOVAL OF ACTION**<br><br><u>Filed Concurrently With:</u><br><br>1. Notice of Removal;<br>2. Civil Cover Sheet;<br>3. Disclosure Statement and Certification and Notice Interested Parties; and<br>4. Proof of Service |

# DECLARATION OF CHRISTOPHER WARD

I, Christopher Ward, declare as follows:

1. I am a partner at Foley & Lardner LLP, counsel of record for Defendants Aircraft Service International, Inc. ("ASIG"), Air Menzies International (USA), Inc., and Menzies Aviation (USA), Inc. (hereinafter referred to as "Defendants") in the above-captioned action. I am admitted to practice in the United States District Court for the Southern District of California. I have personal knowledge of each of the facts set forth below, and if called to testify, could and would testify competently thereto.

2. I returned a signed notice of acknowledgment of service of the Complaint to Plaintiff Richard Douglass ("Plaintiff") on December 18, 2023.

3. A true and correct copy of the Complaint, and all other process and pleadings filed with the San Diego Superior Court, Case No. 37-2023-00049985-CU-OE-CTL are attached hereto as **Exhibit A.**

4. Defendants filed and served their Answer to the Complaint on January 17, 2024. A true and correct copy of the Answer is attached hereto as **Exhibit B**.

5. A true and correct copy of the docket in the Superior Court of California, County of San Diego is attached hereto as **Exhibit C.**

6. Defendants are filing with the Clerk of the San Diego Superior Court, in which this action is currently pending, a Notice of Filing Notice of Removal, together with this Notice of Removal and supporting documents, pursuant to 28 U.S.C. § 1446(d). The Notice of Filing Notice of Removal together with this Notice of Removal are also being served on Plaintiff pursuant to 28 U.S.C. § 1446(d).

7. In conjunction with ASIG's human resources department, I reviewed ASIG's documents related to the allegations in the Complaint. From those documents, I have ascertained that Plaintiff was employed by Defendant ASIG, but has no employment relationship with either Air Menzies International (USA), Inc. or Menzies Aviation (USA), Inc.

8. For all times relevant to this Action, the LOCAL #74, United Service

1  Workers Union, IUJAT (the "Union") has served as the sole and exclusive bargaining
2  agent for the purposes of collective bargaining with many ASIG employees at San Diego
3  International Airport ("SAN"), including Plaintiff during his employment with ASIG.
4  ASIG and the Union are both parties to a collective bargaining agreement ("CBA") under
5  the Railway Labor Act that was ratified by the Union's members.  A true and correct
6  copy of the CBA is attached hereto as **Exhibit D**.  The CBA attached as **Exhibit D**
7  remains the operative CBA governing the terms and conditions of covered ASIG
8  employees at SAN, including Plaintiff.  Further, in addition to the employees subject to
9  the CBA, various employee groups working for one or more Defendants in California are
10 covered by collective bargaining agreements that have been negotiated with several
11 different unions—separate and apart from the CBA applicable to Plaintiff and other
12 employees who work at San Diego International Airport—which also address wages,
13 hours, and other terms and conditions of employment.

14        9.    ASIG is a Delaware corporation headquartered in Dallas-Forth Worth, Texas
15 ("DFW").

16        10.   Menzies Aviation (USA), Inc. is also a Delaware corporation with its
17 headquarters in Dallas-Fort Worth, Texas.  Menzies Aviation, Inc. is the parent company
18 of both ASIG and Menzies Aviation (USA), Inc. and the Menzies enterprise's high-level
19 officers work at the DFW headquarters and direct, control, and coordinate the company's
20 activities from DFW.

21        11.   Air Menzies International is an entity with international operations which is
22 separate from Menzies Aviation (USA), Inc. and ASIG and is not properly named as an
23 employer in this case because Plaintiff never had any relationship or contact with Air
24 Menzies International.  Accordingly, the estimated putative class number reflected herein
25 does not include Air Menzies International employees.

26        12.   In connection with Defendants' Notice of Removal, I pulled a report on the
27 total number of ASIG's current and former non-exempt employees in California for the
28 time period November 16, 2019 through January 10, 2024 (the approximate class period).

1  That report shows that the number is 3,408, and approximately 2,108 of those employees
2  are former employees.
3      13.   I also accessed the personnel and pay records for Plaintiff Richard Douglass.
4  Those records, which are maintained in the ordinary course of business, show that he
5  worked for ASIG from August 20, 2021 through March 4, 2022, and that his regular
6  hourly rate of pay was $17.75 at the time he resigned from his employment with ASIG.
7      14.   ASIG operates on a biweekly payroll period cycle, such that in the 28 weeks
8  between August 20, 2021 and March 4, 2022, there were approximately 14 pay periods.
9      15.   I performed the following calculations to determine a plausible amount
10 attributable to Plaintiff's minimum wage violation allegations in the Complaint for the
11 time period of November 16, 2019 to January 10, 2024:
12          a.   The minimum wage in California during 2022 was $15 per hour.
13               Using those numbers I calculated the average minimum wage for the
14               class period at $15 per hour.
15          b.   Assuming, conservatively, each putative class member was not paid
16               for one hour of work per week, the weekly liability would total $15.
17               According to Plaintiff's personnel and pay records, Plaintiff worked
18               for ASIG for 28 weeks during the operative time period.  Therefore, I
19               multiplied $15 by 28 weeks for a total of $420.  Plaintiff seeks at least
20               that amount in liquidated damages.
21          c.   During the time period relevant to this Action, Defendants employed
22               approximately 3,408 non-exempt employees, as defined by Plaintiff's
23               Class.  Assuming conservatively that each putative class member
24               worked the same number of weeks at Plaintiff (28), multiplying by
25               3,408 putative class members results in a total of $1,431,360 in
26               alleged minimum wage liability.
27     16.   I performed the following calculations to determine a plausible amount
28 attributable to Plaintiff's overtime allegations in the Complaint for the time period of

November 16, 2019 to January 10, 2024:

    a.    Using Plaintiff's average pay rate based on his lowest and highest regular rates of pay during his employment ($14.75 + $17.75 / 2 = $16.25), and assuming conservatively one hour per week of unpaid overtime at time and a half, which is a rate of $24.375 ($16.25 x 1.5), Plaintiff's unpaid overtime claim would be valued at $24.375 per week.  According to Plaintiff's personnel and pay records, Plaintiff worked for ASIG for 28 weeks during the operative time period. Therefore, I multiplied $26.625 (one hour of overtime) by 28 weeks for a total of $682.50.

    b.    Assuming, as Plaintiff alleges, that his claims are representative of the claims of all putative class members, I multiplied Plaintiff's potential overtime claim of $682.50 by 3,408 putative class members, for a total of $2,325,960 as an estimate of alleged overtime liability for the class.

17.    I performed the following calculations to determine a plausible amount attributable to Plaintiff's meal and rest period violation allegations in the Complaint for the time period of November 16, 2019 to January 10, 2024:

    a.    According to his personnel and pay records, Plaintiff generally worked five days a week during his 28 weeks of employment.  Using Plaintiff's average straight time rate of $16.25, and conservatively assuming a single meal period violation per week, Plaintiff's total meal period liability would total $455 ($16.25 x 28).

    b.    That number multiplied by 3,408 class members results in total alleged liability of $1,550,640.  It is therefore plausible that Plaintiff's meal period violation allegations total $1,550,640.

    c.    The same calculations apply to Plaintiff's rest period claim, meaning Plaintiff's alleged liability totals $455 and alleged potential class

liability totals $1,550,640.

18. I performed the following calculations to determine a plausible amount attributable to Plaintiff's claim for wage statement penalties from August 20, 2021 to March 4, 2022:

    a. I am aware that California Labor Code § 226 imposes a $50.00 initial violation for the first pay period and $100.00 violation for every subsequent pay period, up to a maximum of $4,000.00 per individual for inaccurate wage statements. I am informed by my client that ASIG operates on a biweekly payroll period cycle, such that in the period of August 20, 2021 to March 4, 2022 that Plaintiff worked, he allegedly suffered 14 wage statement violations;

    b. Based on the allegations in the Complaint, Plaintiff would receive an alleged penalty of $1,350 calculated as $50 for the first violation and $100 for each of the remaining 13 pay periods.

    c. I then applied the estimate, based on the allegations in Plaintiff's Complaint, that there are 3,408 individuals in this class and calculated the number of pay statements at issue as follows: each putative class member would receive a penalty of $1,350, calculated as $50 for the first violation and $100 for each of the remaining 13 pay periods. The conservative penalty estimate with 3,408 putative class members is $4,600,800 (3,408 x $1,350).

19. I performed the following calculations to determine a plausible amount attributable to Plaintiff's waiting time penalties claim:

    a. Multiplying Plaintiff's final pay rate of $17.75 by eight hours per day by 30 days (the statutory maximum) results in a total of $4,260 in waiting time penalties attributable to Plaintiff's individual claim.

    b. Of the 3,408 putative class members, approximately 2,108 are former employees who would be allegedly entitled to waiting time

penalties. I multiplied the estimated $4,260 (Plaintiff's waiting time penalties total) by 2,108 for a total of $8,980,080.

20. I performed the following calculations to determine a plausible amount attributable to Plaintiff's reimbursement claim:

    a. Plaintiff alleges that Defendants failed to indemnify and reimburse him and the putative class for expenses for the use of their personal cell phones, vehicles, computers, and home internet.

    b. Assuming conservatively that Plaintiff spent at minimum $100 per month for each of the expenses enumerated in his Complaint over the course of his 28 weeks of employment, the plausible amount in controversy for his individual unpaid reimbursement claim could be $700 ($100 x 7 months).

    c. Using a conservative estimate that each putative class member worked for Defendants for only one year and taking Plaintiff's allegations as accurate representations of the putative class, I calculated that a plausible amount in controversy for the putative class's unpaid reimbursement claim could be $4,089,600 ($100 per month x 12 months x 3,408 putative class members).

21. Based on the amounts in controversy for each claim, as set forth above, the total damages sought plausibly amounts to $24,529,080.

22. Accepting as true the allegations in the Complaint that counsel for Plaintiff and all putative class members is entitled to recovery of attorneys' fees and costs incurred, I calculated the amount in controversy for attorneys' fees as 12.5% of $24,529,080, which totals $3,066,135. Including attorneys' fees and costs, therefore, the total amount in controversy for this Action is $27,595,215.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on January 17, 2024, in Chicago, Illinois.

                              */s/ Christopher Ward*
                              Christopher Ward